IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ERIC NOEL,                                             Civ. No. 99-649-AC

               Plaintiff,                        FINDINGS AND
                                                       RECOMMENDATION

     v.

MYRNA A. HALL, trustee and personal
representative of the ESTATE OF BRIAN
C. HALL, deceased, SANDRA A. HALL,
fka SANDRA JOHNSON, GABRIELLE S.
LENNARTZ, HERB WEISSER, and
MICHELLE A. MERCHANT,


               Defendants.

---

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Eric Noel ("Noel") has filed two separately briefed motions for partial summary

judgment. The first motion, entitled "Plaintiff's Consolidated Motions for Partial Summary

Judgment and Injunctive Relief" (#360), seeks summary judgment on Noel's claims against defendant Brian Hall[1] ("Brian Hall") and Gabrielle Lennartz ("Lennartz") with respect to the wiretapping claim asserted against them. Specifically, Noel asserted claims against both Brian Hall and Lennartz for unlawful interception, disclosure, and use of wire communications in violation of the Wiretap Act, 18 U.S.C. §§ 2511(a), (c), and (d), as well as claims under Oregon Revised Statutes ("ORS") Chapters 133 and 165.[2] He also seeks a temporary or permanent injunction against any future use or disclosure of the allegedly intercepted communications.

The second motion, entitled "Plaintiff's Second Motion for Partial Summary Judgment" (#361) seeks summary judgment against Sandra Hall, Brian Hall, and Lennartz (collectively "Defendants") on claims of breach of fiduciary duty; conspiracy to breach fiduciary duty; fraud and misrepresentation in violation of partnership law; and loss of use of home, damage to mobile home, and damage to personal property. Noel also seeks leave to rescind or dissolve his partnership with Sandra Hall and Brian Hall as a result of the violations of partnership law. Defendants have also filed cross-motions for summary judgment on these remaining claims.

*Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of*

---

[1] Brian Hall is now deceased and is personally represented in this lawsuit by Myrna A. Hall.

[2] This court recently issued a decision in this case denying Noel's motion to reinstate similar wiretapping claims against another defendant, Sandra A. Hall ("Sandra Hall"). This decision was adopted by Judge Hernandez on February 13, 2012 (Docket #465). Thus, there are no pending wiretap claims against Sandra Hall.

*Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Threshold Issues*

I.      Voided Judgment

After briefing on these motions closed, the Clark County Superior Court voided a judgment issued in a prior related case.  This judgment was originally entered in 1999 in favor of Sandra Hall, and held that Noel had intercepted communications in violation of the law.  The order voiding the original judgment states, in relevant part:

> that the Judgment in favor of Sandra Hall and against Eric Noel, entered on February 9, 1999 and the Findings of Fact and Conclusions of Law entered on August 4, 1999 shall be VACATED; that the Void proceedings shall not be used to support any allegation that Plaintiff intercepted wire communication or committed any other crime; and that Case No. 256087-3 be dismissed.

(Docket #455, Exhibit ("Ex.") 2 at 1.)  The parties were granted supplemental briefing to address the effect of the voided state court judgment on the present case.  Noel argues that the effect of this ruling is profound, voiding all of the state court's findings, orders, and evidentiary rulings.  He also argues that it undermines the evidence given at the state court level.  Defendants argue that the impact, if any, is minor.

Noel first argues that the state court's action undermines subsequent decisions by the federal district and appellate courts and that this court is bound by the state court's recent decision.  He also argues that the court may not rely on evidence arising from the state court litigation and seeks to strike a number of Defendants' exhibits and statements of fact as set forth in their concise statement.  Upon doing so, Noel argues, the court would have no basis upon which to find that he "intercepted" wire communications.  Noel goes on to reiterate his argument that recordings made in the ordinary course of business were not "intercepted" for purposes of the federal wiretap statutes.  He claims that the recordings were made solely for "backup protection" as part of his electronic communication

service. He argues that he could not have intercepted a conversation he was a party to, as the act would lack the requisite intent. He points to testimony in which, Noel claims, Brian Hall admitted that Noel's recordings were only accidental.

### A. *Ninth Circuit Ruling*

Noel's argument hinges on his contention that the District Court, in *Noel v. Hall*, Civil No. 99-649-AS, 2006 WL 2129799 (D. Or. July 28, 2005), and the Ninth Circuit, in *Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009), relied on the state court's judgment in dismissing the wiretap claims against Herb Weisser ("Weisser"), a co-defendant in this case against whom all claims have been dismissed. In particular, Noel argues that the Ninth Circuit relied on the state court finding in concluding that he had intercepted the communications *before* Defendants obtained the tapes in question and could therefore not state a claim against Defendants for violations of wiretap laws. Thus, Noel contends, the Ninth Circuit's ruling that he could not state wiretapping claims against Defendants is now void, and Defendants may be held liable under state and federal wiretap laws.

Noel further argues that, to the extent that he was not the first interceptor and the Ninth Circuit's opinion must be disregarded, that the "law of the case" is actually an opinion issued by District Judge Haggerty in January 2000. That opinion addressed a motion to dismiss filed by Defendants and concluded that Noel could state a claim for violations of federal wiretap laws. According to Noel, after the state court issued its judgment, the district court reversed itself at summary judgment, finding instead that Noel had indeed been the first interceptor.

Noel misreads the Ninth Circuit's prior decision. In its opinion, the Ninth Circuit did not rely, whatsoever, on the state court's "interception" finding. It instead analyzed whether Defendants had intercepted the phone calls in question when they listened to and copied tapes with recorded

phone conversations on them.  The court concluded that Weisser did not intercept the phone calls and that Noel had no claim against Weisser under the interception provision.  Then, in discussing the use and disclosure claims against Weisser, the court explicitly stated that the state court proceedings did not factor into its analysis.  It wrote: "If Noel asserted that his own interception was not unlawful, he could not state a claim against Weisser for using or disclosing an *unlawfully* intercepted communication."  568 F.3d 743, 751.  The statement contains a footnote which reads: "We do not consider whether Noel would be precluded from making such an assertion given the state court judgment against him on Hall's wiretapping claims.  Neither party raises the question of the effect of that judgment on these proceedings."  *Id.*  In fact, the court determined that, regardless of the legality of the interception, Noel was unable to state federal or state wiretap claims against Weisser.  Thus, the subsequent voiding of the state court judgment has no effect on the Ninth Circuit's ruling on this issue.

### B.    Evidentiary Objections

Noel argues that, due to the voided judgment, all evidence arising from the state court matter should be stricken.  Brian and Sandra Hall ("The Halls") oppose Noel's evidentiary objections as untimely because Noel failed to object to the evidence at the time the summary judgment briefing took place, noting that Noel waited until the day of hearing on the summary judgment motions before seeking to suspend the ruling in light of the pending state court ruling, though he could have done so earlier.  Lennartz argues that the critical facts remain the same, in spite of the voided state court judgment.  The court agrees with the general proposition that the voiding of the state court judgment does not change the underlying factual record and, to the extent the evidence is admissible in this court, the state court's recent actions do not preclude its admission or consideration.

II.    Choice of Law

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state . . . ." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted).  A party seeking to apply the substantive law of a state other than the forum state "has the obligation to identify material differences between the applicable law of Oregon and of the other forum[.]" *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301, 157 P.3d 1194 (2007).  *See also Waller v. Auto-Owners Ins. Co.*, 174 Or. App. 471, 475, 26 P.3d 845 ("As proponents of Florida law, it was incumbent on the parties to identify material differences in the applicable law of Florida and Oregon. Because neither party has done so, we apply Oregon law in our analysis." (citations omitted)).  Here, Noel has asserted claims under both Oregon and Washington law.  As Noel has failed to meet his obligation to identify material differences between the two, the court applies Oregon law to all asserted state law claims.

*Factual Background*

In 1996 and 1997, Noel "owned and operated the businesses known as Vancouver Riding Academy and North American Horse Show Management[,]" both of which maintained offices in Ridgefield, Washington.  (Noel Concise Statement of Material Facts ("CSMF") I [3] ¶1.)  These businesses shared an office with Auctions2, Inc., an Oregon corporation with another office and telephone number in Portland, Oregon. *Id.* at ¶ 2. Noel provided these three businesses with basic

---

[3] For purposes of this disposition, documents associated with "Plaintiff's Consolidated Motions for Partial Summary Judgment and Injunctive Relief" (#360) will be identified with the roman numeral I, and those associated with "Plaintiff's Second Motion for Partial Summary Judgment" (#320) will be identified with the roman numeral II.

office equipment and capabilities, including the ability to make telephone calls and send faxes. *Id.* at ¶¶ 4-5.

There was a mobile home located on the premises of the Vancouver Riding Academy. *Id.* at ¶ 6. At the time of the actions at issue in this case, the ownership of the mobile home was in some dispute.[4] On April 23, 1997, Sandra Hall filed a claim in small claims court where she alleged that "Eric is living in Sandy's home and did not pay rent as agreed in Oct[ober] of 1996." (Halls Response CSMF I ¶¶ 6-8.) Shortly thereafter, on May 7, 1997, Brian and Sandra Hall entered the mobile home. *Id.* at ¶ 9. The Halls maintain that, at the time they entered the mobile home, they believed they were the owners. (Halls Response CSMF I ¶¶ 6-8.) Inside the mobile home, The Halls found a number of cassette tapes. *Id.* at ¶ 11. They listened to a portion of one tape and discovered that the tapes contained recorded telephone calls. *Id.* The Halls took the tapes with them when they left. After listening to additional tapes, Sandra Hall called Lennartz to tell her about the tapes and their content. (Lennartz CSMF ¶ 2.) Sandra Hall expressed her concern that taking the tapes was illegal and Lennartz agreed to contact an attorney. (Lennartz CSMF ¶ 2.)

Lennartz called Weisser, an attorney, who advised her that the recordings could constitute violations of state and federal law. (Lennartz CSMF ¶¶ 3,4.) He suggested that Lennartz listen to the tapes, document their content, and inform the people on the tapes that they had been recorded without their knowledge. (Lennartz CSMF ¶¶ 4, 6.) On Weisser's advice, Lennartz made copies of the tapes, listened to them, and identified some of the people whose conversations had been recorded on the tapes. *Id.* at ¶ 17-20. Lennartz prepared a summary of the tapes' contents and gave

---

[4] On August 28, 1998, the ownership of the mobile home was adjudicated in the Superior Court of Clark County, where the court held that as of October 11, 1996, Noel was the owner of the mobile home. (Noel Aff., Ex. 7 at 2-3.)

FINDINGS AND RECOMMENDATION        8                                    {KPR}

it to Weisser. *Id.* at ¶ 24. Lennartz then called Sandra Hall to brief her on this conversation. (Lennartz CSMF ¶ 7.) Around that same time, Sandra Hall also saw the summary and provided her own written commentary. *Id.* at ¶ 25.

At some point subsequent to the discovery of the tapes, there was a discussion about agreeing not to pursue claims associated with the tapes against Noel in exchange for ownership of the horse and the mobile home. (Lennartz CSMF ¶ 11.) There was also some discussion of Lennartz purchasing the horse for $7,500, but this transaction never took place. (Lennartz CSMF ¶ 12.) It was contingent on the horse being examined by a veterinarian. *Id.* Sandra Hall testified that Lennartz "was considering buying [the horse] for $7,500," and wanted to have a veterinary examination. (Hall Depo. 170:3-6.) According to Sandra Hall, neither she nor Brian Hall ever advised Lennartz not to bid on the horse at auction. (Hall Depo. 174:7-12.) Weisser testified that he discussed the possibility of using the wiretap charges against Noel as a bargaining chip in attempting to resolve the dispute between Noel and Defendants. (Lennartz Aff., Ex. 2 at 9-12.)

Lennartz also called the Clark County Sheriff's Department and "was told by an officer to make copies of the tapes and to deliver the originals to the Sheriff's Department." *Id.* After duplicating, listening to, and documenting the contents of the tapes, Lennartz delivered the originals to the Sheriff's Office. *Id.* Sandra Hall spoke to Sheriff's Deputy Mick Nolan ("Nolan") who advised her to notify individuals who had been recorded by Noel. (Lennartz CSMF ¶ 8.) Sandra Hall testified that Nolan told her to contact those on the tapes because they needed to press charges. (Hall Depo. 131:4-7.) The summary was also given to an officer at the Clark County Sheriff's Office. *Id.* at ¶ 26. Lennartz both testified as to the content of the tapes at trial in state court and disclosed the contents of the tapes to various third parties. *Id.* at ¶ 27-30.

Sometime later, Noel reported the Halls' entry into the mobile home to the Clark County Sheriff's Office. *Id.* at ¶ 12.

Prior to the dispute involving the mobile home and the tapes, Noel and Sandra Hall entered into an agreement to purchase a horse together. Pursuant to this agreement, the horse was purchased and kept at the Vancouver Riding Academy between May 1, 1995, and May 15, 1996, and Noel paid for its maintenance, training, and care expenses. (Noel's Ex. 1 at 2.) In October 1996, the horse was sent to California. (Noel CSMF II ¶ 7.) At some point, Noel and Sandra Hall began to disagree about what to do with the horse, as well as the nature and particulars of their agreement and relationship.

On November 25, 1998, the Superior Court of Skamania County determined that Noel and Sandra Hall had an oral agreement with respect to the horse. (Noel Aff., Ex 1 at 2, 4.) An award of damages was entered in Noel's favor for approximately $5,000, most of which represented Sandra Hall's share in the cost of caring for the horse. *Id.* at 4. On appeal, the Washington Court of Appeals disagreed with this characterization and instead found that the parties had entered into a joint venture to which principles of partnership law applied. (Noel Aff., Ex. 2 at 1.) The court based this determination on the following findings of fact made by the trial court and not disputed on appeal: that Noel and Sandra Hall made an oral agreement to purchase, train, and ultimately sell the horse for profit; Sandra Hall was to contribute the $750 purchase price and Noel the board and training; the horse was purchased as planned, with Sandra Hall named as the owner; and the parties were to share equally in any eventual profit. *Id.* at 6. The Washington Court of Appeals also found that, as joint venturers, Noel and Sandra Hall owed each other a fiduciary duty and remanded to the trial court to consider the issue of dissolution by breach of fiduciary duty. *Id.* at 11-12. The court

FINDINGS AND RECOMMENDATION        10                                    {KPR}

also remanded for reconsideration the damages calculation in light of the application of partnership

law as well as the award of attorney fees.  Sandra Hall admits that she knew of the existence of the

joint venture and partnership upon the 2000 ruling, but claims she did not know of its existence prior

to that ruling.  (Halls Response CSMF II  ¶¶ 1-2.)

The Halls and Lennartz submitted separate briefs on this matter.  Although their arguments

are not identical, they are substantially the same and the court will treat them as such, except to the

extent that it is necessary to accurately represent the record.

*Discussion*

I.      Law of the Case

Defendants argue that some of the claims asserted by Noel are precluded under the "law of

the case" doctrine.  Under the law of the case doctrine:

> the decision of an appellate court on a legal issue must be followed in all subsequent
> proceedings in the same case.  The doctrine is a judicial invention designed to aid in
> the efficient operation of court affairs.  Under the doctrine a court is generally
> precluded from reconsidering an issue previously decided by the same court, or a
> higher court in the identical case.  For the doctrine to apply, the issue in question
> must have been decided explicitly or by necessary implication in the previous action.

*Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (internal citations, quotations,

and punctuation omitted).  A court must apply the law of the case unless one of five exceptions

applies.  The court may exercise its discretion and "depart from the law of the case if:  '1) the first

decision was *clearly erroneous*; 2) an intervening change in the law has occurred; 3) the evidence

on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice

would otherwise result.'"  *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (emphasis

in original) (quoting *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)). Where the district and

circuit courts have previously ruled on issues in this case, the court will evaluate whether the ruling

FINDINGS AND RECOMMENDATION          11                              {KPR}

controls a particular issue in the case.

The Ninth Circuit's most recent ruling, *Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009), addressed Noel's wiretap claims against Weisser and affirmed dismissal by this court on summary judgment. Although the current motion concerns different defendants, that opinion analyzed legal issues that are identical to the issues presented here, and the court ruled on a variety of legal questions relevant to the current motion. First, the court considered Noel's contention that, pursuant to his wiretap claims under 18 U.S.C. § 2520, he had standing to bring a claim based on conversations to which he was not a party because he had a "possessory interest" in the communications. The Ninth Circuit declined to rule on this argument, but noted that standing based on a "possessory interest" was created with corporations and other legal entities in mind, not individuals. *Id.* at 748.

Second, the court evaluated whether Weisser, in "advis[ing] Lennartz to listen to and copy Noel's tape recordings of phone conversations[,]" had "procure[d] [a] person to intercept" said communications. *Noel*, 568 F.3d at 747. The court ruled that he had not because "[t]he Wiretap Act defined 'intercept' as 'the aural or other acquisition of the contents of any wire . . . communication through the use of any electronic, mechanical, or other device.'" *Id.* at 749 (quoting 18 U.S.C. § 2510(4)). The court explained that interception occurs when the communication is made and does not occur again when a recording of the communication is subsequently used or replayed.

Third, the court ruled that because Noel himself had recorded the phone conversations he could not assert a claim under 18 U.S.C. § 1125(1)(c) for use and disclosure of the recorded materials because the statutory section applies only to "the dissemination of private communications that have been *unlawfully* intercepted." *Id.* at 751 (emphasis in original). Thus, the court reasoned, to the extent that Noel asserts that he lawfully made the recordings, they are not protected by this

FINDINGS AND RECOMMENDATION        12                              {KPR}

statute.  If, however, Noel asserts that he obtained the recordings unlawfully, he lacks standing to bring claims based on his own unlawfully obtained recordings.

These legal rulings are binding on this court under the law of the case doctrine.

II.    Wiretap Claims

A.    *Standing under the Wiretap Act*

Noel argues that he has standing to bring claims against Brian Hall and Lennartz under 18 U.S.C. § 2520, which provides for recovery of civil damages under the Wiretap Act.  It states:

> . . . any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).  As Noel argued previously before both the District Court and the Ninth Circuit, with respect to Weisser, he has standing to sue under this section based on conversations to which he was not a party because he has a possessory interest in those communications.  Although the Ninth Circuit declined to explicitly rule on this issue, it indicated that it was not persuaded that an individual's possessory interest was sufficient to cure a standing issue.  The Ninth Circuit opted to rule on different grounds and this courts adopts that approach as well.

B.    *Interception of Wire Communication*

1.    Interception

Noel argues that Brian Hall and Lennartz intercepted wire communications in violation of 18 U.S.C. § 2511(1)(a), which provides that: "any person who (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)." Noel cites *United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998),

FINDINGS AND RECOMMENDATION        13                                    {KPR}

wherein the court held that voicemail messages may be protected under the Wiretap Act. However, in its 2009 decision in this case, the Ninth Circuit distinguished its holding in *Smith*. The court drew a distinction between voicemail messages and recordings of phone calls: "There is, however, a difference between voicemail messages and Noel's tape recordings of phone conversations. As we explained in *Smith*, voicemail messages are the same as phone conversations for the purposes of the Act because they are a part of the original 'aural transfer' between parties to the communication." *Noel*, at 750.

The Ninth Circuit explained that the "original aural transfer" is concerned with the points of origin and reception of the communication. Interception between those two points is prohibited by the Wiretap Act whereas subsequent recording or replaying of the communication is separate from the original aural transfer and, so, is not protected by the Act. Here, Brian Hall and Lennartz's alleged actions do not constitute "interception" under the Act. The Ninth Circuit has ruled, under the facts of this very case, that the phone calls in question were not "intercepted": "Because an individual does not 'intercept' a 'wire communication' by listening to or copying recorded tapes of phone conversations, we conclude that Weisser did not violate the interception provision of the Wiretap Act." *Id.*

Noel provides no analysis as to why this holding does not apply equally to Brian Hall and Lennartz and, on the record before it, the court sees no such distinction. The recordings that were obtained and listened to by Brian Hall and Lennartz simply do not meet the definition for unlawful interceptions. The alleged acts unquestionably occurred subsequent to the original aural transfer and, accordingly, are not interceptions.

2.    Electronic Storage

Noel also argues that these recordings qualify as "electronic storage" as defined by the Act and are thus protected under the Act. Electronic storage is has two definitions under the Act. *See* 18 U.S.C. § 2510(17)(A)-(B). Noel acknowledges the Ninth Circuit's holding that the tapes in question do not meet the first definition: "temporary, intermediate storage or a wire or electronic communication incidental to the electronic transmission thereof[.]" 18 U.S.C. § 2510(17)(A). Even so, he maintains that these recordings do satisfy the second definition of electronic storage, which includes "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(B).

The Act defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Noel argues that the Ninth Circuit previously failed to address whether Noel provided an electronic communication service when he provided telephone, computer, and fax services to the Vancouver Riding Academy, North American Horse Show Management, and Auction2, Inc.

With respect to Auction2, Inc., Noel points out that it is an Oregon corporation, located in Portland, and its Portland telephone number was routed to Noel's business number in Ridgefield, Washington. Both numbers were billed to Noel at his business address in Ridgefield, Washington. Furthermore, he states, Auction2, Inc. listed a fax number that was also billed to Noel. Vancouver Riding Academy and North American Horse Show Management were also allowed to use Noel's telephone and fax services. According to Noel, "[a]ll incoming telephone calls to the Vancouver Riding Academy, North American Horse Show Management, and Auction2, Inc. were routinely recorded on tape as back-ups of the original telephone call as part of [Noel's] normal business

FINDINGS AND RECOMMENDATION         15                              {KPR}

practice." (Pl. Memo 13.)  Furthermore, he contends that all incoming faxes were routed directly to his computer where they were electronically stored and could be retrieved as needed.  Based on the above, Noel argues that he provided an "electronic communication service" and therefore the recordings qualify as electronic storage for purposes of the Wiretap Act.

The Ninth Circuit addressed the meaning of "electronic communications service" in *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004).  In *Theofel*, the defendants had unlawfully accessed email messages stored by the plaintiffs' internet service provider ("ISP").  The defendants argued that this conduct was not covered by the protections of the Secured Communications Act's ("SCA") because the messages accessed were not in "electronic storage" as defined by the SCA.  The SCA is a statutory scheme similar to the Wiretap Act in that it prohibits unauthorized access to communications.  The SCA incorporates the definitions set forth in the Wiretap Act.  *See* 18 U.S.C. § 2711(1) ("the terms defined in section 2510 of this title . . . have, respectively, the definitions given such terms in that section[.]").  Thus, the Ninth Circuit's interpretation of such terms under the SCA is directly relevant to analysis under the Wiretap Act.

The *Thoefel* court noted, with respect to the first definition of "electronic storage" that "[s]everal courts have held that subsection (A) covers e-mail messages stored on an ISP's server pending delivery to the recipient.  Because subsection (A) applies only to messages in 'temporary, intermediate storage,' however, these courts have limited that subsection's coverage to messages not yet delivered to their intended recipient." 359 F.3d at 1075 (citations omitted).  The court went on to hold, however, that the communications at issue in that case fell most comfortably within the second definition because, "[t]here is no dispute that messages remaining on NetGate's server after delivery are stored 'by an electronic communication service' within the meaning of 18 U.S.C.

FINDINGS AND RECOMMENDATION          16                              {KPR}

§2510(17)(B)." *Id.*  So, one example of an "electronic communication service" is an ISP.

In another instructive case, *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), the court addressed the meaning of "electronic communication service" in the context of the internet.  The court wrote:

> 18 U.S.C. § 2510(15) defines an "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  Examples of providers in the Internet world would include ISPs such as America Online, Juno and UUNET, as well as, perhaps, the telecommunications companies whose cables and phone lines carry the traffic.

*Id.* at 511 n.20.  Thus, in the context of the present matter, a provider of an "electronic communications service" would be Noel's telephone carrier, whereas he himself would qualify as a user of that service.  The fact that Noel made his service available to third parties for their use is of no relevance to this analysis.  Accordingly, Noel's recordings do not constitute recordings in electronic storage for purposes of the Wiretap Act.  And, finally, because the court concludes that Noel's phone and fax services do not so qualify, it need not address whether the storage was undertaken for purposes of backup protection, pursuant to 18 U.S.C. § 2510(17)(B).

Because this ruling applies to the nature of the recordings themselves, it applies equally to all Defendants.  Accordingly, Noel may not state a wiretap claim premised on an interception against Brian Hall or Lennartz.

C.     *Use and Disclosure*

Noel asserts that Lennartz disclosed the contents of the recordings in violation of 18 U.S.C. § 2511(1)(c).  Again, with respect to Noel's claims against a former defendant, Weisser, the Ninth Circuit concluded that Noel was not able to assert such a claim.  The court explained:

> Noel cannot, however, assert a claim based on his own interception of the communication.  We would be required to reject any such contention either for

failure to state a claim or for lack of standing. If Noel asserted that his own interception was not unlawful, he could not state a claim against Weisser for using or disclosing an *unlawfully* intercepted communication. . . .

In the alternative, were Noel to acknowledge that he illegally intercepted the conversations, he would not have standing under the Wiretap Act to obtain damages for the use or disclosure of those conversations. Whatever the limits of standing under § 2520, it does not include standing based on conversations that the plaintiff himself illegally intercepted.

*Noel*, at 751 (emphasis in original). Thus, Noel may not, as a matter of law, state a claim for unlawful use and disclosure under the Wiretap Act of the recordings in question. The court adopts the reasoning and conclusion of the Ninth Circuit with respect to Noel's use and disclosure claims. Again, because this ruling applies to the nature of the recordings and their interception, it applies equally to his claim against Lennartz.

D.    *Injunction*

Noel also seeks to enjoin Defendants from further use and disclosure of the tape recordings. In 2002, following a ruling by the Supreme Court that rejected its standard for a preliminary injunction as "too lenient," the Ninth Circuit restated its standard as follows. "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Furthermore, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

However, it is a truism that, where there is no unlawful action to enjoin, the court has no basis upon which to issue an injunction. As the foregoing discussion illustrates, not only is Noel not likely to succeed on the merits, he has actually failed on the merits. He cannot meet the standard for entitlement to injunctive relief and, thus, his request should be denied.

E.    *State Wiretap Claims*

1.    Claims under Oregon Revised Statutes Chapter 133

Claims under this chapter involve the cooperation of the district attorney or law enforcement. As this court previously held with respect to Weissner, claims under Chapter 133 fails as a matter of law because they involve interceptions, disclosures, or uses in concert with a district attorney or law enforcement officer. (Docket No. 302 at 15.) Under the facts currently before the court, Noel has failed to present any evidence that the alleged interceptions fall under the protections of Chapter 133. There is no dispute that the alleged interceptions were initiated by Noel himself and not in connection with the conduct of a district attorney or law enforcement officer. The court need not revisit this issue further to determine that summary judgment on these claims should be granted in favor of Defendants as a matter of law.

2.    Claims under ORS Chapter 165

Again, the cited provisions of Chapter 165 are part of the criminal code. ORS 165.540 prohibits the obtaining of specific types of communications and provides that violations of such prohibitions are "Class A misdemeanor[s]." OR. REV. STAT. 165.540(8). Similarly, ORS 165.543 prohibits interception of communications and is also punishable as a "Class A misdemeanor." OR. REV. STAT. 165.543(1). This issue was addressed by this court previously in Magistrate Judge Ashmanskas's Findings and Recommendation: "Plaintiff has not argued, and this court is not

convinced, that it is either necessary or desirable to create a private right of action for violation of [] O.R.S. 165.540 or 165.543." (Docket No. 302 at 16.) The Ninth Circuit upheld this ruling. *See Noel v. Hall*, 336 Fed. Appx. 592, 593 (9th Cir. 2009) ("The district court correctly held that Noel cannot state a claim under sections 165.535-543 of the Oregon Revised Statutes."). Consistent with this court's and the Ninth Circuit's rulings, summary judgment on these claims should be granted in favor of Defendants as a matter of law.

III.    Intentional Interference with Contractual Relations

Under Oregon law, a party is liable for intentional interference with contractual relations ("IICR") where the following elements are present:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.

*Allen v. Hall*, 328 Or. 276, 281, 974 P.2d 199 (1999). Where an IICR claim is premised on an allegedly defamatory statement, the statement may be privileged and the speaker granted immunity from such claim. *Lund v. Arbonne International, Inc.*, 132 Or. App. 87, 95, 887 P.2d 817 (1994) (citing *Wattenburg v. United Medical Lab.*, 269 Or. 377, 379, 525 P.2d 113 (1974)). "A publication is conditionally privileged if the maker reasonably believes that the recipient's knowledge of the defamatory matter is necessary to protect the interests of the maker or the recipient or that it involves a subject of mutual concern to the maker and the recipient." *Greenfield v. Ollikala*, 85 Or. App. 357, 360, 736 P.2d 599 (1987) (citations omitted). A privilege may be lost, however, where it is abused:

> The privilege may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or

if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose.

*Id.* at 96 (citing *Shafroth v. Baker*, 276 Or. 39, 45, 553 P.2d 1046 (1976)). The plaintiff bears the burden of proof that the privilege was abused. *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 356, 563 P.2d 1205 (1977) (citing W. PROSSER, THE LAW OF TORTS § 111 (1971)).

Noel alleges that Lennartz and Sandra Hall persuaded third parties to breach their agreements for horse training and riding services with Noel with the motive to "harm [Noel]'s business interests by denying him the advantages of the agreements with said third parties." (SAC ¶ 77-78.) Noel also alleges that Lennartz and Sandra Hall used improper means when they disclosed the content of the cassette tapes, in violation of state and federal wiretap laws. (SAC ¶ 77.)

  A.   *Lennartz*

Lennartz argues that Noel cannot sustain his prima facie burden on this claim against her, asserting that there is no evidence tending to show that Lennartz used improper means or had an improper motive in revealing Noel's recording activities. She cites *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209, 582 P.2d 1365 (1978), which holds that interference alone does not implicate this tort; the interference itself must be otherwise wrongful to rise to the level of tortious conduct. *See id.* at 209-210 ("[The means] may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession."). Further, Lennartz contends, the plaintiff must also show that the defendant "had a duty of non-interference; i.e., that he interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff." *Uptown Heights Assocs. Ltd. Partnership v. Seafirst Corp.*, 320 Or. 638, 651, 891 P.2d 639 (1995) (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371 (1979)). Furthermore, under Oregon law, "if liability in

tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff 'as such.'" *Top Service*, 283 Or. at 211.  However, this purpose may be excused where the actor is privileged to so act.  "A person who interferes with a contract is not always responsible for the resultant injury. If he is promoting an interest which is equal or superior in social value to that with which he interferes, his actions are said to be privileged or justified." *Wampler v. Palmerton*, 250 Or. 65, 74, 439 P.2d 601 (1968) (citations omitted).

Noel argues that Lennartz intentionally interfered with his contractual relations when she violated state and federal wiretap laws, and published "injurious falsehoods" about him to third parties.  Noel notes in particular her disclosure that Noel had recorded phone conversations in an effort to discredit him.

Lennartz argues that the first asserted instance of improper means is baseless because Noel cannot establish as a matter of law that Lennartz violated state or federal wiretap laws.  Lennartz also argues that, to the extent that the publication of injurious falsehoods, or defamation, is a valid basis for finding improper means, that the statements were true is a complete defense.  *See Bahr v. Statesman Journal Co.*, 51 Or. App. 177, 180, 624 P.2d 664 (1981) ("It is axiomatic that 'truth' is a complete defense in a defamation case.").  According to Lennartz, "[i]t is undisputed that [Noel] was recording telephone conversations of his clientele without their consent." (Lennartz Memo. 22 (citing Noel's CSMF for Consolidated Motions ¶ 5.)  Thus, any statement Lennartz made to that effect cannot qualify as an injurious falsehood or defamatory statement.  Lennartz next argues that her conduct was privileged in that it was intended to advance a superior social value, namely exposing Noel's misconduct in taping phone conversations without consent.  She also notes that she was acting at the direction of attorney Weisser and the Clark County Sheriff's Department.  Lennartz

FINDINGS AND RECOMMENDATION        22                                    {KPR}

argues further that Noel failed to plead a specific false statement made by Lennartz, or a specific relationship negatively impacted by such statement. Finally, Lennartz argues that Noel has produced no evidence that the allegedly defamatory statements were in fact published. For these reasons, Lennartz contends, summary judgment on this claim should be granted.

Noel responds that Lennartz's motive was not only to inform people that they had been recorded, but to actively interfere with his client relationships and attempts to gain employment. He argues that Lennartz not only disclosed information about the tapes, but also made various false and negative statements about him.[5] Noel cites to numerous exhibits in support of this argument. He cites a conversation between Lennartz and Barbara McDonald ("McDonald"), evidenced by notes allegedly taken by McDonald. These notes, contained in Noel's Exhibit 27, include a wide variety of negative statements about Noel that do not relate to the tape recordings. According to Noel's declaration, these notes were "entered into evdience as 'Exhibit 19' during the deposition of Gabrielle Lennartz on December 21, 2000." (Noel Decl. ¶ 28.) Noel also cites a conversation between Lennartz and Ed Spencer, citing two exhibits in support. The first, Exhibit 8, consists of Weisser's responses to interrogatories and does not mention Spencer, or a conversation Lennartz had with Spencer, at any time. (Noel Decl. Ex. 8.) The second, Exhibit 11, is a letter from Sandra Hall to Noel dated April 23, 2007, and, again, does not mention Spencer. (Noel Decl. Ex. 11.) Noel next cites his own complaint in a state court action as evidence that Lennartz's motive was to frustrate

---

[5] Noel reiterates that Lennartz made statements based on information obtained in an illegal wiretapping operation. The court addressed this argument in the "improper means" section and does not factor into the its analysis of "improper motive." Noel also argues that Lennartz acted as an agent for the police department in effecting an illegal search and seizure. The court notes that Lennartz was not present when the recordings were taken from the mobile home, and this argument is wholly without merit and borders on specious.

FINDINGS AND RECOMMENDATION    23    {KPR}

his business ventures. (Noel Decl. Ex. 28.) Finally, he makes reference to Lennartz's summary of the tapes and her reference to a "cast of characters" as evidence that Lennartz had an improper motive.

The only evidence that speaks directly to Lennartz's motive are the notes taken by McDonald and, less significantly, Lennartz's summary of the tapes and its reference to a "cast of characters." For her part, Lennartz admits that she called McDonald on or about May 7, 1997, but denies the content as characterized in Noel's Concise Statement of Material Facts (#367). She apparently does not object to the exhibit's admission as a whole, however. Even so, the notes taken by McDonald are inadmissible hearsay. Noel seeks to justify their inclusion by stating in his declaration that they were "admitted" at Lennartz's deposition, overlooking that no judge was present to rule on the notes' admissibility and citing no legal authority for his claim that when used at deposition, hearsay is converted into admissible evidence. In fact, that the notes were admitted at Lennartz's deposition is insufficient to authenticate them for the court's present purposes. First, admission at deposition is distinct from admission by a court. Second, there is no reason given why Lennartz would have been competent to authenticate a document created by a third party. Third, even if McDonald were to authenticate the document, it still constitutes hearsay.

The document presents two levels of possible hearsay. First, the document contains statements Lennartz allegedly made about Noel. These statements are not presented for their truth, i.e., that what Lennartz said about Noel actually was true, and are therefore not hearsay. Second, the document is itself a statement made out of court and purports to prove that Lennartz made the particular statements about Noel to McDonald. As such, it is an out of court statement offered to prove the truth of the matter asserted and is, thus, hearsay. Accordingly, the court does not consider

FINDINGS AND RECOMMENDATION        24                        {KPR}

McDonald's notes competent evidence for their content, i.e., the truth of the matter asserted. As such, the court is left with Lennartz's own summary and its reference to a "cast of characters" as evidence of Lennartz's improper motive. Although the tone of the summary is at times disparaging of Noel, it is merely evidence that Lennartz was not fond of Noel. It is not sufficient to raise a genuine issue of material fact that Lennartz had an improper motive and unlawfully interfered with Noel's economic relations, and summary judgment should be granted in favor of Lennartz on this claim.

      *B.*    *Sandra Hall*

Sandra Hall argues that Noel cannot meet the pleading requirements for this claim, let alone create a genuine issue of material fact sufficient to survive summary judgment. First, Sandra Hall contends that Noel has failed to allege facts sufficient to state a claim for intentional interference with contractual relations and merely alleges the legal conclusion that Sandra Hall had the improper motive of harming his business interests. Second, Sandra Hall argues that Noel has presented no direct evidence that her motive was to specifically interfere with his business relationships and has merely shown that she informed people that Noel had recorded phone conversations with them without their knowledge. She notes that the burden on Noel is high to show that the interference was intentional and was not otherwise privileged.

In response, Noel states that he did assert sufficient factual allegations to state this claim in that he alleged a business relationships associated with his training and riding services; alleged that Sandra Hall intentionally interfered by contacting these clients; alleged that her purpose was to discredit him and harm his business; alleged that this was achieved via improper means, i.e., illegal wiretaps; and alleged the publication of injurious falsehoods to coerce him into abandoning his

claims related to the horse and mobile home. Accordingly, Noel argues, he has effectively stated a claim for intentional interference with contractual relations against Sandra Hall and this claim should not be dismissed.

Noel also refers to evidence in the record that, in his view, at least raises genuine issues of material fact. First, he points to Brian Hall's testimony as to the ownership of the motor home in a manner contrary to a prior court finding that Noel was the owner at the time of entry. Second, he cites evidence that Sandra Hall held herself out as the sole owner of the horse. Third, he refers to Lennartz's allegedly inconsistent testimony about the content of the tapes.

This evidence is insufficient to meet Noel's burden on summary judgment. As above, Noel's wiretap claims fail as a matter of law and, therefore, do not furnish the improper means required for this claim. In fact, the only evidence Noel presents relevant to Sandra Hall is that she represented herself as the sole owner of the horse. Noel provides no evidence of a specific professional or business relationship harmed by Sandra Hall's representations; a causal relationship between Sandra Hall's representations and harm to that relationship; or actual damage that occurred as a result of these representations. Noel cannot meet his prima facie burden on summary judgment and this claim should be dismissed as to Sandra Hall.

IV.   Injurious Falsehoods

The tort of injurious falsehoods has been infrequently referenced by Oregon courts. In *Parker v. Title & Trust, Co.*, 233 F.2d 505 (9th Cir. 1956), the Ninth Circuit evaluated the claim in a case applying Oregon law, writing:

> Dean Prosser has collected cases under the heading of "Injurious Falsehood". These differ from the ordinary cases of slander or libel in that they involve the recovery for damages of a character different from that which ordinarily flows from slander or libel directed against a person. They too can be said to be actions on the case; but as

> the text accompanying those cases suggests those actions for injurious falsehood are
> subject to the same defense of privilege recognized in cases of personal defamation.

*Id.* at 516. The District Court of Oregon similarly cited Prosser to define the tort of injurious

falsehood: "It is a tort which passes by many names. . . . Under whatever name, the essentials of

the tort appear to be the same. It consists of publication or communication to a third person, of false

statements concerning the plaintiff, his property or his business, which cause him pecuniary loss."

*Martin v. Reynolds Metals Co.*, 224 F. Supp. 978, 981-982 (D. Or. 1963) (quoting Prosser, *Injurious*

*Falsehood: The Basis of Liability*, 59 Columbia Law Review 425). The Oregon Supreme Court also

recognized Prosser's definition in the context of a discussion of similar torts. In his treatise on torts,

Prosser wrote that "'[d]efamation, interference with contract, injurious falsehood, and the broader

tort of interference with prospective economic relations, all are different phases of the same general

wrong of depriving the plaintiff of beneficial relations with others.'" *Straube v. Larson*, 287 Or. 357,

371 (1979) (quoting W. PROSSER, THE LAW OF TORTS, 4th ed. at 926).

Noel alleges that all defendants participated in a scheme to "publish[] false, disparaging and

injurious statements harmful to plaintiff's interests in his profession as a horse trainer, riding

instructor and horse show judge and in operating Vancouver Riding Academy." (SAC ¶ 93.) He

alleges that they intended that the statements damage his reputation and sought broad dissemination

of said statements. (SAC ¶¶ 94-95.) He further alleges damages to be assessed at trial and an

entitlement to punitive damages.

Sandra Hall argues that Noel has not sufficiently pleaded this claim as his allegations are

conclusory and a bare recitation of the elements of the tort. She also argues that the court dismissed

a similar claim against Weisser and should apply that dismissal as the law of the case to the present

claim. She further argues that the claim is duplicative of the IICR claim and that, if the claim is

construed as one for defamation, it is time-barred.  Noel responds that he alleged a factual basis for this claim in two paragraphs of his complaint.  The first paragraph asserts that Defendants contacted Noel's customers and informed them of the existence and content of the recordings in order to discredit Noel.  (SAC ¶ 36.)  The second alleges that Lennartz and Sandra Hall urged Noel's customers to take their business elsewhere. (SAC ¶ 76.)  He goes on to cite allegations that Lennartz and Sandra Hall's motive in doing so was to harm his business interests, and that these actions did in fact damage his "employment and business prospects."  (SAC ¶¶ 77-78.)

The court agrees that Noel has failed to sufficiently plead this claim, let alone support it on summary judgment, and his response citing portions of the complaint does nothing to bolster the conclusory allegations set forth under this claim.  Although there is additional evidence in the record that Lennartz made extremely unflattering comments about Noel in a phone conversation with McDonald, *see supra* pp. 23-25, the evidence is not admissible and cannot form the basis of this claim.  Furthermore, to the extent that this claim is premised on informing Noel's customers that he had recorded their conversations without knowledge or consent, this claim is essentially a recast of Noel's IICR claim and fails for the same fundamental reason:  it was not wrongful for Defendants to communicate true information to Noel's customers, even if that information was damaging to Noel.  In other words, Defendants' statements were not "falsehoods."  This claim fails to create a triable issue of fact and should be dismissed.

V.    Breach of Fiduciary Duty

Noel alleges that Sandra Hall breached fiduciary duties owed to him by virtue of their partnership relationship.  "Partners in a joint venture owe a fiduciary duty to one another.  The duty is one of 'loyalty, fair dealing and full disclosure in all matters effecting the conduct of the venture's

business.'" *Commerce Mortgage Co. v. Industrial Park Co.*, 101 Or. App. 345, 352-353, 791 P.2d

132 (1990) (quoting *Delaney v. Georgia-Pacific Corp.*, 278 Or. 305, 310, 564 P2d 277 (1977)).

"Under Oregon law, the elements of a claim for breach of fiduciary duty are (1) the existence of a

fiduciary relationship, (2) breach of a fiduciary duty, and (3) identifiable loss or injury as the result

of the breach." *Maixner v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 152774, 28-29

(D. Or. Oct. 26, 2011) (*Smith v. Healy*, 744 F. Supp. 2d 1112, 1126 (D. Or. 2010)).  The fiduciary

duties owed between partners are the duty of loyalty and the duty of care, as described in ORS

67.155.  In general, the duty of loyalty requires that a partner "account to the partnership and hold

for it any property, profit or benefit" obtained by way of the partnership and its property, to "refrain

from dealing with the partnership in a manner adverse to the partnership[,]" and to "refrain from

competing with the partnership in the conduct or winding up of the partnership business[.]"  OR.

REV. STAT. 67.155 (2)(a)-(c) (2011).  The duty of care calls for partners to "refrain from engaging

in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of the law."

OR. REV. STAT. 67.155 (3) (2011).

> Noel also argues that Sandra Hall engaged in constructive fraud when she breached her legal

duty, because her actions deceived others.

> Oregon courts have emphasized constructive fraud "is simply a catch-all term
> for a variety of transactions in which the courts have decided that fraud-type relief
> is appropriate; many of those transactions do not require either intent to deceive or
> actual dishonesty of purpose." Although the Oregon Supreme Court "has expressed
> some skepticism about the theory, it has noted "[c]onstructive fraud usually arises
> from a breach of duty where a relationship of trust and confidence exists. Indeed it
> is said to arise from the very conception and existence of such relationship."

*Kreidler v. Taylor*, 473 F. Supp. 2d 1090, 1102 (D. Or. 2007) (quoting *Pollock v. D.R. Horton,*

*Inc.-Portland*, 190 Or. App. 1, 21-22, 77 P.3d 1120 (2003); *United States Nat'l Bank of Portland*

*v. Guiss*, 214 Or. 563, 586, 331 P.2d 865 (1958)).  Thus, to the extent Sandra Hall breached a fiduciary duty to Noel she may also have committed constructive fraud.  Noel does not explain how these claims are materially different, however.

Noel specifically alleges the following actions by Sandra Hall that breached her fiduciary duties to Noel:  she ignored and fraudulently misrepresented the terms of the partnership wherein profits and losses were to be shared equally; she misrepresented her ownership interest in the horse to Raizy Goffman ("Goffman") and Nancy Nordstrom ("Nordstrom"), thus frustrating the sale of the horse; she threatened to disclose the existence and contents of tapes to third parties in an effort to force Noel to cede ownership of the horse; she denied the parties' agreement to sell the mobile home with proceeds due only upon sale of the horse; she pursued, in concert with Lennartz, a veterinary examination of the horse despite a court order stating that such examination was at Noel's discretion; and she deliberately outbid a buyer for the horse, only to turn around and sell the horse to her husband for far less than market value.  Noel argues that Sandra Hall cannot escape her fiduciary duties by claiming ignorance of the existence of a partnership between her and Noel.

Sandra Hall responds that her actions did not constitute a breach of fiduciary duty to Noel.[6] The court will address each alleged breach in turn.

---

[6] Sandra Hall also argued that Noel may not currently state a breach of fiduciary duty claim against her because, under Washington law, the partnership must be fully "wound up" prior to bringing a claim for breach of fiduciary duty.  This rule is no longer the law in Washington, however: "Such an accounting was required under the common law and was a precondition to an action between partners, including de facto partners.  Since the adoption of RUPA in 1998, however, Washington law no longer requires such an accounting."  *Simpson v. Thorslund*, 151 Wash. App. 276, 281-282, 211 P.3d 469 (2009).  The court observes that Oregon has also adopted RUPA and, as such, the argument similarly fails under Oregon law.  *See Dept. of Revenue v. Marks*, 2009 Or. Tax. LEXIS 241 (Or. Tax. 2009) ("At the time of taxpayers' actions, Oregon state partnership law was based on the Revised Uniform Partnership Act of 1997 (RUPA)." (citing Or Laws 1997, ch 775, § 2)).

FINDINGS AND RECOMMENDATION       30                              {KPR}

*A.    Repudiation of Joint Venture*

Noel argues that Sandra Hall breached her fiduciary duty when she denied that a partnership existed, denied their agreement to share equally all profits, losses, and expenses associated with the horse, and refused to pay her share of expenses.

Sandra Hall argues that Noel has not established that she denied or disregarded the joint venture in such a way as to trigger a breach of her fiduciary duty under that agreement.  First, she argues that a good faith belief that a partnership does not exist is not unlawful, and that her denials of and actions contrary to a partnership agreement were based on her good faith belief that such agreement did not exist.  She points out that her belief that a partnership did not exist was so genuine that she litigated the issue in Washington state court, and although reversed on appeal, the trial court held initially that a partnership did not exist between Sandra Hall and Noel.  Thus, she argues, her belief that she was not in a partnership with Noel was reasonable and in good faith.

Noel is correct that a purported good faith belief that a fiduciary duty did not exist is insufficient to excuse an actual breach of that duty.  The elements of breach of fiduciary duty under Oregon law are simple: a relationship, breach of a duty occasioned by that relationship, and an injury resulting from the breach.  There is no intent or bad faith element needed to establish the claim for breach of fiduciary duty.  *See Drake v. Mutual of Enumclaw Ins. Co.*, 167 Or. App. 475, 482 (2000) (referring to various claims, including breach of fiduciary duty: "Even as to claims for which an intention to injure need not be inferred solely from the nature of the theory of recovery, the pleading itself may allege facts demonstrating an intention to injure." (citations omitted)).  Under Oregon partnership law, knowledge is defined such that "A person has notice of a fact if the person: (a) Knows of it; (b) Has received notification of it; or (c) Has reason to know it exists from all the facts

known to the person at the time in question." OR. REV. STAT. 67.010 (2) (2009). Knowledge of the existence of a partnership may be inferred from knowledge of all of the facts giving rise to a partnership. Thus, the fact that Sandra Hall was not aware that she was, in a legal sense, in a partnership with Noel at the time of the alleged breach is irrelevant to this analysis. She was in a partnership and if her conduct breached her duties to Noel, she is liable for breach of fiduciary duty.

There are a number of factual disputes regarding what conduct Sandra Hall engaged in, whether it was in violation of the duties of loyalty or care owed to her partner, Noel, and whether any actual injury resulted from the alleged breaches. These are genuine issues of material fact that preclude summary judgment as to this alleged breach.

### B. Claimed Ownership of the Horse

Noel argues that Sandra Hall breached her fiduciary duty when she informed Goffman and Nordstrom that she was the sole owner of the horse, told Goffman and Nordstrom not to sell the horse, and demanded that Goffman return the horse to her, its sole owner. He also claims that breach occurred when Sandra Hall told Goffman that Noel had no authority to enter into agreements regarding the horse.

Sandra Hall argues that her representations that she was the sole owner of the horse were permissible as they were made in good faith, and that in attempting to get the horse back to Washington she "was merely exercising her right as an equal partner . . . ." (Halls Response (#391) at 11.) She notes that Noel made similar representations based on *his* good faith belief that he was the sole owner of the horse. Sandra Hall argues further that, even if the claim is legally sustainable, there are myriad fact issues related to the horse's stay in California, and summary judgment is inappropriate at this time.

Sandra Hall has apparently conceded that she represented herself as the sole owner of the horse. However, whether that amounts to a breach of fiduciary duty sufficient to state such a claim, breach being but one element of the claim itself, remains a question of fact. Accordingly, there are factual issues precluding summary judgment on this alleged breach.

C.     *Threats Associated with the Tapes*

Noel argues that Sandra Hall breached her fiduciary duty to Noel when she participated in a scheme to threaten Noel regarding the tapes in exchange for ownership of the horse. Noel cites testimony of Weisser, Lennartz, and Brian Hall, as well as his own testimony, and a report by a deputy sheriff in Clark County to corroborate this allegation.

Sandra Hall argues that, because the partnership pertains solely to matters associated with ownership of the horse, any alleged threats of related to the tapes and the mobile home are not subject to fiduciary duties and, thus, this claim should be dismissed. Furthermore, even if she had fiduciary duties associated with the tapes and the mobile home, Sandra Hall argues that Noel never alleged that she was part of the scheme to use the tapes to get the horse and, therefore, no duty attaches to the alleged actions by third parties. In the event the court disagrees, Sandra Hall maintains that there are myriad fact issues that preclude summary judgment in Noel's favor. She describes the alleged scheme as merely a discussion regarding a potential settlement agreement. She also argues that she was not a party to the alleged scheme and, therefore, cannot have breached a fiduciary duty via participation in the scheme.

The court agrees that there are factual issues regarding the nature of the alleged scheme and Sandra Hall's role in it. In the court's view, the use of the tapes to obtain ownership of the horse is not distinct from the partnership and, thus, implicates Sandra Hall's fiduciary duties to Noel.

Furthermore, Sandra Hall does not dispute that such discussions were had, and the record bears this out. Lennartz admits that there was a conversation to which Sandra Hall was a party during which they discussed not pressing charges against Noel in exchange for the horse and Weisser also testified that the parties discussed using the wiretap charges as a "bargaining chip" in the dispute. Whether these conversations and the alleged scheme rise to the level of a breach of fiduciary duty or are merely evidence of a good faith attempt to settle a dispute is a question of fact. Thus, summary judgment with respect to this theory of breach should be denied.

D.    *Breach of Agreement to Sell Mobile Home*

Noel argues that the mobile home was part of the partnership and, therefore, Sandra Hall had a fiduciary duty in matters associated with the mobile home as well. As such, Sandra Hall breached her duty when she repudiated her agreement to sell the mobile home to Noel; filed claims associated with the mobile home against Noel in small claims court; and constructively evicted Noel from the mobile home by cutting off power and water to the mobile home.

Sandra Hall argues, again, that the court has previously ruled that the sale of the mobile home was not part of the joint venture and, thus, no fiduciary duties attach to its sale. Sandra Hall contends that this is the law of the case. Judge Ashmanskas did, in fact, rule that the partnership did not implicate the mobile home. In his decision dismissing claims against Weisser, Judge Ashmanskas wrote: "[T]he partnership between Plaintiff and Sandra Hall related to the horse and not the mobile home. Accordingly, Sandra Hall had no fiduciary duty to Plaintiff with regard to the mobile home." *Noel v. Hall*, Civ. No. 99-649, Docket #302 (D. Or. Sept. 20, 2005). The court

agrees that this explicit finding is the law of the case and must be followed.[7]  Accordingly, all claims

for breach of fiduciary duty related to the mobile home should be dismissed.

      E.      *Attempts to Obtain a Veterinary Examination*

     Noel argues that Sandra Hall breached her fiduciary duty to him when she conspired with

Lennartz to obtain a veterinary examination of the horse, contrary to the order of the Skamania

County Superior Court that any such examination be at Noel's discretion.  In furtherance of this

conspiracy, Lennartz ordered an examination of the horse.  According to Noel, Sandra Hall conspired

to obtain this examination in order to decrease the horse's market value, insofar as a seller would

have to disclose to a potential buyer any defect discovered in the examination.

     Noel cites *Esmieu v. Schrag*, 88 Wash. 2d 490, 563 P.2d 203 (1977), in support of this

argument.  In *Esmieu*, there was a dispute between trustees and beneficiaries about management of

a trust.  The parties were in litigation regarding disposition of the trust property.  The trustees

initiated an evidentiary hearing before the court without notifying the beneficiaries.  The Supreme

Court of Washington held that this failure to notify was both a denial of due process and a breach

of the fiduciary duty a trustee owes a beneficiary.  The court wrote:

> The trustees, as fiduciaries, owe to the beneficiaries the highest degree of good faith, care, loyalty and integrity. This duty includes the responsibility to inform the beneficiaries fully of all facts which would aid them in protecting their interests. At the very least, this would require the trustees to notify the beneficiaries of the September 16 hearing where testimony was taken which directly affected the disposition of the trust property. Though the trustees and defending beneficiaries were adversaries on the issue of the exchange, the trustees' duty of loyalty and care was at no time suspended.

*Id.* at 498 (citing *Monroe v. Winn*, 16 Wn. 2d 497, 133 P.2d 952 (1943); *United States v. Bennett*,

---

     [7] Judge Ashmanskas's Findings and Recommendation was adopted by Judge Haggerty on July 28, 2006.  (Docket #332.)

57 F. Supp. 670 (E.D. Wash. 1944)) (treatise citations omitted).

Sandra Hall argues that Noel did not provide legal support for his theory that pursuing a veterinary examination of the horse breached Sandra Hall's fiduciary duty to Noel because it was contrary to a court order. She argues that the holding in *Esmieu* is relevant to the trustee-beneficiary relationship, and not the relationship of parties to a partnership or joint venture. She also argues that the proper remedy for violation of a court order is a sanction for contempt of court. And, Sandra Hall points out, there is no evidence that the court order was actually violated, merely that Lennartz made some attempt to initiate a veterinary examination.

The court is not persuaded that, per *Esmieu*, the need to comply with court orders and the observance of a fiduciary duty may be conflated in the manner asserted by Noel. If the request for a "vet check" was contrary to the fiduciary duty owed Noel by Sandra Hall, it was not because it was in violation of the Skamania County Superior Court's order. And, to the extent that order was violated, it should have been raised before the court that issued the order. That said, if the veterinary examination put the sale of the horse in jeopardy, or otherwise damaged the partnership property, seeking the examination would amount to a breach. There are numerous issues of fact with respect to this allegation and summary judgment should be denied.

F.    *Sale of the Horse*

Noel argues that Sandra Hall breached her fiduciary duty under her partnership agreement with Noel when she sold the horse to her husband to the exclusion of a buyer who had made a better offer on the horse. Noel theorizes that Sandra Hall knew that a buyer in California had made an offer

of $5,000 for the horse.[8]  The Halls made a counteroffer one dollar greater than the California offer.

Pursuant to the court's order regarding possession and sale of the horse, Sandra Hall's consent was required prior to a sale becoming final.  Sandra Hall withheld her consent and instead petitioned for the return of the horse and authorization to sell the horse.  With her request presumably granted, Sandra Hall proceeded to sell the horse at auction.  Lennartz was prepared to bid $7,500 for the horse, but was instructed not to outbid Brian Hall.  Brian Hall was able to purchase the horse for $710.

Sandra Hall presents a different account of the sale of the horse.  First, the Skamania County Circuit Court authorized Noel to sell the horse within a sixty-day period.  Noel did not sell the horse within that period and the court then authorized Sandra Hall to transport the horse to Washington for sale at auction.  Sandra Hall was only permitted to sell the horse within a particular location and time period, and did so at the only auction available within those parameters.  Noel had notice of the auction, but did not appear at the auction or otherwise arrange for purchase of the horse.

The parties present starkly different scenarios in which the sale of the horse took place.  If Sandra Hall did, in fact, sell the horse in a manner contrary to the interests of the partnership, she will have breached a fiduciary duty to Noel.  If Sandra Hall, instead, sold the horse in the manner directed by the court and consistent with the interests of the partnership, the sale will not constitute a breach of fiduciary duty to Noel.  As such, the parties dispute is one of fact and summary judgment is inappropriate with respect to this claim.

------

[8] There is some ambiguity in the record as to whether this figure is actually $5,500, but the specific amount is irrelevant for the court's purposes and does not constitute a finding as to the value of the offer, which may be determined later by a finder of fact.

VI.   Conspiracy to Breach Fiduciary Duties

Noel also alleges that Lennartz and Brian Hall conspired at various points with Sandra Hall to breach her fiduciary duties to him.   In particular, Noel alleges that Brian Hall and Lennartz "conspired to convert [Noel's] partnership property and personal property, commit extortion and breach fiduciary duties owed by Sandra Hall" to Noel.  (SAC ¶ 83.)

As a preliminary matter, the court notes that liability for civil conspiracy is premised on the existence of an underlying tort.  See *Dost v. Northwest Trustee Services, Inc.*, 3:11-cv-00270-ST, 2011 U.S. Dist. LEXIS 150517, *26-28 (D. Or. Dec. 21, 2011) ("If there is no independent tort, then joint liability under an aiding and abetting or civil conspiracy theory will not lie." (citing *Morasch v. Hood*, 232 Or. App. 392, 402-403)).   Accordingly, Lennartz and Brian Hall are liable for civil conspiracy to breach a fiduciary duty only inasmuch as Sandra Hall is ultimately found liable for breach of fiduciary duty in the first place.

In *Granewich v. Harding*, 329 Or. 47 (1999), the Oregon Supreme Court adopted the three theories of such liability set forth in the Restatement (Second) of Torts (1979), which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Restatement of the Law, Second, Torts, § 876* (1979).  Accordingly, Noel must establish that Brian Hall and Lennartz acted pursuant to one of the three theories to establish liability for conspiracy to breach a fiduciary duty.

FINDINGS AND RECOMMENDATION        38                          {KPR}

*A.    Brian Hall*

Brian Hall argues that he should be granted summary judgment on the breach of fiduciary duty claim because he bears no personal duty to Noel as a fiduciary and has not acted consistent with any of the three theories of liability for the tortious conduct of another. As to the first theory, engaging in a tortious act with another "pursuant to a common design," Brian Hall argues that because he himself never committed an independently tortious act, he cannot be liable under this theory. He cites the commentary to the Restatement section above-quoted. It states: "In order for the rule stated in Clause (a) to be applicable, it is essential that the conduct of the actor be in itself tortious. One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability." *Restatement of the Law, Second, Torts, § 876* (1979) (Comment on Clause (a) at (c)). Therefore, unless Brian Hall committed tortious conduct in his own right, he cannot be liable for the tortious conduct of Sandra Hall, with whom Noel had a fiduciary relationship. Here, there is no evidence that Brian Hall committed tortious conduct in his own right and, thus, Noel cannot recover against him under this theory of liability.

Brian Hall next argues that he cannot be liable under the second theory of liability because he lacked the requisite knowledge that Sandra Hall's "conduct constitute[d] a breach of duty[.]" *Restatement of the Law, Second, Torts, § 876*(b) (1979). Brian Hall argues that the nature of the relationship between Sandra Hall and Noel was not conclusively determined until the Washington Court of Appeals held that a partnership existed between them. Thus, he could not have knowingly assisted Sandra Hall in breaching her fiduciary duty to Noel. Brian Hall cites a legal finding by Magistrate Judge Ashmanskas that Weisser could not have knowingly assisted Sandra Hall in

breaching her duty because "[a]t the time Weisser counseled Sandra Hall about her possible counter claims against Plaintiff, the issue of whether a partnership existed was in dispute." (F&R at 19.) In fact, Brian Hall contends, not only was the status of the partnership not legally determined until 2000, a November 25, 1998, court order stated that Noel and Sandra Hall were not in a partnership with respect to the horse.

The court is not persuaded that Judge Ashmanskas's finding as to Weisser is directly applicable to the present question. Brian Hall and Weisser were not similarly situated with respect to the myriad disputes between Defendants and Noel. Weisser advised Sandra Hall regarding legal issues for a period of time in 1997. Brian Hall, arguably, had greater knowledge and involvement in the disputes from the beginning and consistently thereafter. As above, for purposes of partnership law, knowledge may be inferred from knowledge of all pertinent facts. Thus, the absence of a legal ruling of partnership notwithstanding, there is a genuine issue of material fact as to whether Brian Hall knew that he was assisting Sandra Hall in breaching a duty to Noel.

Finally, Brian Hall argues that he is not liable under the third theory for the same reason he is not liable under the first, that he did not independently commit a tortious act. The court agrees that Noel has not alleged an independently tortious act committed by Brian Hall and cannot state a conspiracy claim on this theory.

In conclusion, there are genuine issues of fact as to whether Brian Hall knowingly assisted Sandra Hall in breaching a fiduciary duty to Noel, and summary judgment on this claim should be denied.

B.    *Lennartz*

Noel alleges that Lennartz "conspired to convert plaintiff's partnership property and personal

property, commit extortion and breach fiduciary duties owed by Sandra Hall to the plaintiff by virtue

of their joint venture or partnership regarding the purchase, training and sale of a horse, as more fully

set forth herein." (SAC ¶ 83.)

Noel asserts that Lennartz admitted under oath that she participated in a scheme with Sandra

Hall to threaten Noel with prosecution for the recordings if he did not cede ownership of the horse.

He also asserts that Lennartz conspired to circumvent the Skamania County court's order to allow

the horse to be sold without undergoing a veterinary examination.  Lennartz's alleged participation

involved discussions with Sandra Hall and a phone call to a veterinarian requesting an examination

of the horse.  The conspiracy allegedly sought to prevent the horse from being sold and facilitate the

horse's return to Sandra Hall.  Noel further alleges that Lennartz represented that Noel had stolen

the horse in order to damage his reputation.  Finally, Noel claims that Lennartz acted at the direction

of Sandra Hall at the time the horse was auctioned.

Lennartz argues that Noel cannot establish that she conspired with Sandra Hall under any of

the three theories upon which a civil conspiracy may be based.  First, she argues that she did not

perform an independently tortious act.  Specifically, she argues that there was no scheme to coerce

Noel to give up the horse, but rather a discussion about how to settle the dispute; the request for a

veterinary examination was innocent in that she was considering purchasing the horse; and that she

did not conspire with the Halls as to her conduct at the auction.  Second, Lennartz argues that she

could not have knowingly assisted Sandra Hall in breaching a fiduciary duty because the issue was

not yet decided by the court and was, thus, ambiguous.  She cites Judge Ashmanskas's finding

regarding Weisser and contends that it applies with equal force to all defendants.  Third, Lennartz

argues that she did not assist Sandra Hall in committing tortious conduct whilst herself breaching

a duty to a third party, because she had no duty to Noel.

The court agrees that Lennartz did not commit an independently tortious act and cannot be held liable under the first theory of civil conspiracy. The court also agrees that, pursuant to the third theory, Lennartz did not have an independent duty, to Noel or any other third party, that she breached in the course of assisting Sandra Hall in breaching a fiduciary duty. As to the second theory, that Lennartz knowingly assisted in Sandra Hall in breaching her fiduciary duty to Noel, there are genuine issues of material fact. Like Brian Hall, and unlike Weisser, Lennartz had an ongoing involvement with Noel and the Halls, and in the events giving rise to these claims. There is at least a question of fact as to whether Lennartz knew that she was giving Sandra Hall "substantial support and encouragement" in breaching a duty to Noel. Summary judgment on this claim should be denied.

VII.   Blackmail and Extortion

Noel alleges two claims, for blackmail and extortion, premised on Defendants' alleged conspiracy to "convert plaintiff's partnership property, personal property and other rights by using a threat of informing or as consideration for not informing against violation of any laws of the United States and, in particular, 18 [U.S.C.] § 2511 by requesting that plaintiff relinquish any further right, title and interest in the partnership property, to wit, the horse and/or the mobile home that was the subject of dispute." (SAC ¶¶ 87, 89.)

Defendants argue that this claim fails for two reasons: (1) there is no private right of action for these claims, and (2) there is no factual basis upon which to find such conspiracy. The court agrees that both statutes are criminal statutes and do not provide for a private cause of action. This issue was decided previously in this court. In affirming Judge Ashmanskas's Findings and Recommendation, Judge Haggerty wrote: "Plaintiff concedes that he has no private right of action

FINDINGS AND RECOMMENDATION      42      {KPR}

for these claims, but nevertheless seeks leave of the court to reform these allegations into a civil 'RICO' claim." (Hall Exhibit 10 at 6.) Judge Haggerty denied leave to amend at that juncture and granted summary judgment in favor of the defendant. Consistent with this ruling, the court concludes that Noel may not state claims based on either statute and, accordingly, summary judgment on these claims should be granted.

VIII.   Claims for Damage to Property

In his Third, Fourth, and Fifth Claims for Relief, Noel alleges that he was deprived of the use and rental value of the mobile home for almost two years "[a]s a result of the activities of defendants Brian Hall and Sandra Hall[.]" (SAC ¶ 67.) Noel also alleges that the Halls caused damage to the mobile home, including damage to "the walls, floors, windows, doors, carpeting, water system and septic system of his mobile home[.]" (SAC ¶ 70.) He also alleges a claim for general damage to personal property. Noel seeks treble damages and attorney fees associated with these claims.

The court construes these claims as common law conversion claims. Under Oregon law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Complaint as to the Conduct of Martin*, 328 Or. 177, 184, 970 P.2d 638 (1998).

In support of these allegations, Noel cites the following evidence: a state court finding that, as of October 11, 1996, Noel was the owner of the mobile home; a third-party affidavit stating that Sandra Hall had held herself out as the sole owner of the horse to Michael Herbert, a horse trainer, and Raizy Goffman, the owner of Camelot Stables; she further represented that Noel had no rights or authority with respect to the horse; as a result of these misrepresentations, Herbert and Goffman

FINDINGS AND RECOMMENDATION        43                                    {KPR}

ceased efforts to sell the horse, and Nancy Nordstrom also decided not to attempt to sell the horse; as a result of these changed circumstances, Noel incurred expenses to maintain the horse; Sandra Hall filed an action in small claims court to repudiate the agreement for the sale of the mobile home and evict Noel, and in the meantime constructively evicted Noel by removing his possessions and making the mobile home uninhabitable.

Noel argues that he is entitled to the fair market rental value of the mobile home for sixteen months from 1997 to 1999, for a total of $10,000 in damages.  He also argues that he is entitled to recover for damage to the mobile home itself, in the amount of $7,500, and damage to his personal property, in the amount of $4,500.  He seeks treble damages under a provision of Washington law, and attorney fees and costs for these claims.

The Halls respond that they had a good faith belief that Noel was unlawfully residing in the mobile home, and that they were authorized to act in the manner they did, and that these beliefs were initially validated in small claims court.  Furthermore, they argue that Noel has not presented sufficient evidence of actual property damage, or proved that he did not himself cause the damage.

The court agrees that there are genuine issues of material fact regarding whether the Halls converted Noel's property, as well as questions regarding the existence and extent of damages arising from such conversion.  For this reason, summary judgment on this claim is not appropriate.

IX.    Recission of Partnership

Noel also seeks to rescind his partnership with Sandra Hall.  Under Oregon law a partnership is dissolved where "[t]here are no longer two or more partners carrying on as co-owners the business of the partnership for profit." OR. REV. STAT. 67.290(7) (2009). As this circumstance undoubtedly exists with respect to the partnership between Noel and Sandra Hall, Noel's request is moot and the

court will not further address it.

X.    Supplemental Jurisdiction

As concisely explained in *Kruger v. Pac. Benefits Group Northwest*, 228 F. Supp. 2d 1143

(2001):

> 28 U.S.C. § 1367(c)(3) provides the district court may decline to exercise
> supplemental jurisdiction over pendent state law claims if the district court has
> dismissed all claims over which it has original jurisdiction. When determining
> whether to exercise supplemental jurisdiction or to remand the pendent state law
> claims under subsection (c)(3), the district court is informed by the "underlying
> objectives . . . of [judicial] economy, convenience, fairness, and comity." "In the
> usual case in which all federal-law claims are eliminated before trial, the balance of
> factors . . . will point toward declining to exercise jurisdiction over the remaining
> state-law claims."

*Id.* at 1149 (quoting *Executive Software North America, Inc. v. U.S. Dist Court for the Central

District of California*, 24 F.3d 1545, 1557 (9th Cir. 1994); *Acri v. Varian Assoc., Inc.*, 114 F.3d 999,

1001 (9th Cir. 1997) (internal citation omitted)).  Furthermore, where a plaintiff has initiated parallel

litigation in state court, considerations of judicial economy generally weigh against retaining

jurisdiction over state claims after dismissing federal claims.  *See Notrica v. Board of Supervisors*,

925 F.2d 1211, 1215 (9th Cir. 1991) (federal court declining supplemental jurisdiction after

dismissing federal claims where parallel state litigation had been initiated, despite the fact that the

plaintiff's claims were time-barred in state court).

Noel originally filed claims arising from his partnership with Sandra Hall in Washington

Superior Court for Skamania County.  The Skamania court found that no partnership existed between

Noel and Sandra Hall.  Noel appealed the ruling, which ruling was reversed by the Washington Court

of Appeals.  That court held that Noel and Sandra Hall were in fact partners, and it remanded the

claims to Skamania County.  The record here is silent as to whether the parties pursued this case in

Skamania County.

In light of the dismissal of all claims conferring federal jurisdiction on this matter and the factors described above, this court should decline to exercise supplemental jurisdiction over the remaining state law claims.

*Conclusion*

Based on the foregoing, summary judgment should be granted in Defendants' favor on Noel's claims for violations of federal and state wiretap laws; intentional interference with contractual relations; injurious falsehoods; and blackmail and extortion. Summary judgment should be denied as the breach of fiduciary duty claim against Sandra Hall; the conspiracy to breach fiduciary duty claims against Lennartz and Brian Hall; and the conversion claims against Sandra and Brian Hall. In the absence of federal claims upon which the court has subject matter jurisdiction, the court should decline to exercise supplemental jurisdiction over the remaining claims and dismiss said claims without prejudice.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 11, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of April, 2012.

JOHN V. ACOSTA
United States Magistrate Judge